## Anderson Manufacturing Co. v. Iring Transfer Co.

(Decided March 10, 1933.)

(Common Pleas Branch, Third Division).

92

GORDON, LAURENT & OGDEN and T. M. GALPHIN, Jr., for appellant.

JOSEPH S. LAWTON and BURKE & LAWTON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an appeal from a judgment of the Jefferson circuit court (common pleas branch) dismissing petition of appellant in an action to recover for damages to appellant's elevator and "sander" machine, alleged caused by the negligence of defendant while undertaking to remove it.

The record discloses that in December, 1928, Mr. Charles F. Ploetner, acting for the appellant (which we will hereinafter refer to as the plaintiff), called Mr. W. A. Iring, appellee( whom we will hereinafter refer to as the defendant), and asked what he would charge to move some eight machines of the plaintiff company, from its Garden Street Plant to its Beech Street Plant in Louisville and instructed him to go to the Garden Street Plant and see Mr. Holden, its maintenance man, who would there show him the machinery they desired to have moved; that Iring said he would do so and would call him later, which he did, when the contract was made between them, whereby the defendant agreed to move plaintiff's eight machines from the one plant to the other for a price of $83.

Mr. Ploetner testifies that in their conversations had leading up to their making of this agreement, nothing was said about the plaintiff's furnishing the defendant with its elevator or any of its men at the Garden Street Plant, though he told him that his men at the Beech Street Plant would assist him in unloading the machines when they arrived there with them.

It is undisputed that in the course of the defendant's attempt to remove these eight machines from the

Garden Street Plant, as contracted for, while trying to move the last one, a heavy "sander" machine weighing some nine thousand pounds, for the lowering of which from the second to the first floor plaintiff's elevator was used by the defendant, the same was suffered to fall upon the elevator and both to crash through the elevator shaft to the basement below, resulting in the destruction of the "sander" machine and damage to the elevator.

Plaintiff thereupon filed suit against the defendant, seeking a recovery of the damages resulting from this accident, alleging in its petition that the same was caused by the gross negligence and carelessness of the defendant's servants and employees in their methods used for the removal of these machines.

Defendant filed answer traversing the allegations of the petition.

Later he filed amended answer, admitting the making of the alleged contract with plaintiff for the removal of the machines, but further alleged that under its terms the defendant undertook to remove them under the supervision of plaintiff's millwright, and by means of an elevator to be furnished and operated by the plaintiff, and who at all times during the moving operated the elevator; further he alleged that because of a defective spool in the elevator, which broke, the elevator dropped on the machine while suspended in the air by defendant's hoisting apparatus and that the elevator, when thus dropping, its channels cut the ropes and cables of the defendant, holding the machine, causing it and the elevator to fall to the basement, resulting in their damage, and that the complained of accident and damage was caused by the defective condition of the elevator. Further, the defendant pleaded contributory negligence.

Plaintiff replied, controverting the affirmative allegations of this pleading.

Further it appears that this action was instituted against the defendant as a corporation, but upon later discovery that it was not, but in fact that the defendant Iring was doing business as the Iring Transfer Company, it was stipulated between the parties that the case should proceed as if the action had been instituted against Iring individually and had been so summonsed.

These pleadings and stipulation, forming the issues, were by agreement all filed of record and the cause submitted for trial, when, at the conclusion of plaintiff's evidence, it is alleged in its brief that the court held that the plaintiff had made out a case, when the defendant made motion for a continuance, on the grounds that he was taken by surprise because plaintiff had proved that a rope broke, which defendant was using when the sander was being lowered on the elevator; that as plaintiff had not pleaded defective equipment, it could not under his pleadings show this fact. Thereupon, the court sustained defendant's motion upon the ground of surprise, holding that the plaintiff must allege by pleading defective equipment before he could show the breaking of a defective rope used in the work by him.

The case again coming on for trial, plaintiff filed an amended petition alleging defendant's use of defective equipment and the facts as to the breaking of the rope, while used in lowering the machine.

At the conclusion of plaintiff's evidence offered upon this trial, the court sustained defendant's motion for a peremptory instruction. Complaining of this ruling, plaintiff prosecutes this appeal.

The plaintiff's evidence introduced upon the trial tended to show that an oral contract of employment was had between the parties, whereby the Iring Transfer Company agreed to remove these eight machines from one to another of the plaintiff's plants some five miles apart for the sum of $83; that before making this contract, the transfer company was directed to first make an examination of the eight machines to be moved and of their location in the premises from which they were to be removed; that the defendant did accordingly, before making his bid for this removal job, call at the Garden Street Plant to make this examination of the work involved in order to determine a proper charge to be made for it and to that end interviewed and consulted with a Mr. Holden, plaintiff's maintenance man at this building, as to these machines, which were then shown him, and as to the best and most feasible plan for their removal from the building.

Holden testifies that he pointed out to defendant that there were three ways in which these machines,

some of which were installed on the second floor, could be removed from the building. One of these was by using the elevator. The other two ways, shown him, were by using either of two viaducts leading from the second to the ground floor.

Mr. Iring, after considering these different plans, as alleged suggested, and making an examination of the machines in the building, decided to use the elevator method of removing them, but in connection with certain other apparatus he proposed to erect for use in connection therewith, consisting of ropes tied around the "sander" machine, which were attached to pulleys on top of the machine and at the top of the elevator shaft for use, jointly with the elevator, in lowering and removing the heavy "sander" machine. His plan was to let the machine down gradually, lowering it in unison with the movement of the elevator, as it was lowered from the second floor, the machine resting on the elevator, while the hoisting apparatus would lighten its weight thereon by holding back a considerable part of the machine's weight of some nine thousand pounds.

Witness Holden, it appears, was instructed by plaintiff to point out to the defendant the machines to be moved and that, should Iring ask permission for the use of the building elevator or should ask him to run the elevator for him, he should accommodate him by doing anything he could to assist Iring in doing the work.

It further appears that seven of these eight machines were first moved before undertaking to handle the big "sander" machine. Two or three of the smaller machines, weighing three or four thousand pounds, were also on the second floor, and when ready to move them, the defendant's foreman, Dan Lawton, had called to Holden to disconnect the wiring or belting from them, which he did, though it does not appear that he, Holden, did anything more than this by way of assisting in their removal.

When the defendant's men, in the course of this removal work, were finally ready to move the big "sander" machine, Holden was called from his workshop by the defendant's foreman, Lawton, and requested or directed to go to the basement to lower the elevator. Holden states that the foreman also called him to look at how

they had the machine "hung up" and asked him what he thought of it, to which he replied, "That looks good to me." The defendant then had the weight of the machine on the block and tackle slightly above the elevator floor and told Holden that he wanted him to go down and lower the elevator; that when they got the machine lowered onto the elevator, he wanted some one to lower it; that Lawton, defendant's foreman, both gave him his orders about what to do and also placed a man on the second floor to "pass the word" to him in the basement, to direct him about operating the elevator when the lowering work began, so as to move it, pari passu, with his other lowering and rigging apparatus. Holden further states that he had two of his men with him in the basement to assist in operating the elevator by hand as they followed the directions of Iring's men on the second floor, and slowly and smoothly lowered the elevator for them as instructed; that suddenly he heard the sound of a heavy strain on the elevator and called twice to Iring's men above to "hold a tight line"; a few minutes afterwards, the elevator and machine crashed from a few feet below the second floor to the basement, completely demolishing the "sander" machine and damaging the elevator; that the witness, Henry Sandefur, was at the time of the accident standing on the second floor, watching the operation, though he had nothing to do with this removing work, and was not at that time employed by plaintiff.

Sandefur testifies that:

"Iring Transfer Company was to move the sander for the Anderson Company from the second floor through the elevator shaft. They had ropes around this sander, block and tackle fastened in the shaft, then a windlass fastened back to the post. Both started off together, they run for a little distance, the sander came to a stop about two foot from the elevator. The elevator kept on going slowly like 't did when it started, but finally the sander came down and bumped the elevator like that (indicating), did that five or six different times. The last time it come down with so much force the rope on the sander busted. It up-ended and they both went to the basement. * * * I was standing right over of the top of it like this (indicating), Iring's man was back about eight foot from the elevator, he couldn't see nothing, everything was out of his sight."

Also, he states that none of plaintiff's men were on the second floor when the sander was being let down. Under cross-examination he gave substantially the same account of the accident.

The testimony of these witnesses tends to show that the defendant's men on the second floor did not properly or efficiently carry out the plan adopted for lowering the machine by reason of their faulty, jerky and irregular use of the rope and tackle apparatus, but would either let the rope out too fast, when the machine would hit the elevator, or would hold it tight and stop the machine and then let it down again too fast, until finally under the strain of this operation one of the supporting ropes broke, when the machine "up-ended" and fell heavily on the elevator carrying the elevator with it to the basement.

There is nothing in plaintiff's evidence as to the contract of the parties (here only testified to by the plaintiff) tending to show that it contemplated a joint undertaking for the removal of these machines, unless such effect be given to the evidence that plaintiff told its employee, Holden, to render the defendant any assistance he could and in the fact that Holden did, under such direction, operate the elevator for him when so requested and directed by the defendant or by Holden's further testimony, that after the defendant had chosen the elevator method of lowering the machine that Holden had called to his attention the advisibility of using a block and tackle in connection therewith.

However, notwithstanding such volunteered suggestion of method for lowering the machine, it appears by the evidence that the defendant, nonetheless, chose his own plan and devised and prepared this block and tackle apparatus and did independently everything in connection with moving the machine except to operate the elevator, which Holden did, when called by defendant's foreman and requested to do that for him.

Sauer, also a witness for the plaintiff, states that at the time of the accident he was stationed in the basemen with Holden, and testifies as to the falling of the machine, examined afterwards by him, as follows:

"Q. When the sander fell, the elevator fell? A. Yes, sir.

"Q. Was the rope still on the sander? A. Yes, sir.

"Q. Did the sander slip out of the rope? A. No, sir; it didn't slip out of the rope. The way they had it, this dog here in the frog struck this rope here.

"Q. And cut it? A. Yes, sir. * * *

"Q. How high is this channel iron, channel beam, above the top of the sander machine that was being moved? In other words, how far did that drop down? A. It cut the rope, I would say probably from this point here to this point here of the car is about ten foot."

The appellant contends that the court erred in giving a peremptory instruction upon the grounds that the evidence introduced by it showed that the defendant contracted to remove the machine according to its own method and plan chosen therefor and without any agreement that such removal was to be done under the supervision of plaintiff or that he was to be furnished an elevator or men to assist him in performing the contracted work; also that the evidence tended to show that the defendant chose the method of doing the work, devised the apparatus, and had complete charge and direction of the undertaking; further he contends that even if Holden, plaintiff's employee, was negligent while assisting in lowering the elevator as requested by defendant, his negligence, if any, was not, under such circumstances, imputable to the plaintiff, for the reason that when he rendered such assistance to defendant at his special request, he became a servant of the defendant while so engaged; further, he insists that even if Holden remained appellant's servant while lowering the elevator for defendant, there was no evidence tending to show that he was negligent while performing such work; and, finally, he argues that if any act of Holden's can be held to be evidence of negligence, the trial court was not warranted upon this evidence in holding as a matter of law that Holden's act caused the accident or that his act so far contributed to it that it would not have occurred but for his alleged negligence.

Defendant, on the other hand, contends that the granting by the trial court of a peremptory instruction was proper, in that the cause of the accident was not

ascertainable from the evidence introduced by plaintiff; that, at most, it was either the result of the condition or operation of the elevator furnished and operated by plaintiff or else it was the result of one or two or more causes, only one of which was possibly due to the defendant's negligence, with the result that the inference is no stronger that it resulted from the one cause than from the other; and, further, insists that the overwhelming weight of the evidence indicates that the accident was due to the defective condition and operation of the plaintiff's elevator and also that the testimony of plaintiff's witness Sauer destroys that of his witness Sandefur.

With this summary of plaintiff's evidence before us, as well as the parties' conflicting claims regarding it, we deem it sufficient to here only consider the evidence and the claims in respect as to whether the trial court was authorized to peremptorily instruct the jury to find a verdict for the defendant transfer company thereon.

If this evidence introduced by the plaintiff contained anything of substantive or probative value, tending to show the defendant was negligent while undertaking to remove plaintiff's "sander" machine, directly causing it to fall and to be destroyed, independently of any causal contributory negligence by plaintiff, then we must conclude that the court erred in giving the peremptory instruction complained of.

The synopsis of plaintiff's evidence, as hereinabove given, very strongly tends to show that the defendant was, at the time of the accident, attempting to lower this heavy "sander" machine, as the initial step in its removal from this building to plaintiff's Beech Street Plant; also, that he was attempting to remove it pursuant to plaintiff's alleged contract had with him, that defendant for a stated price, as an independent contractor, would remove the machine from the second floor of this building to his other plant.

The evidence further tends to show that defendant was at the time of the accident trying to remove the machine by doing together two things, one being, that he was trying to relieve the elevator of the dangerous strain imposed upon it of the machine's 9,000 pounds of weight, by holding back with the rope tackle a part

of this weight, and at the same time was trying to relieve the ropes of part of the strain of its weight by sharing it with the elevator. The evidence further tends to show that in the execution of this plan for removing the machine, through the negligent or irregular release and letting out of the rope, in part supporting the machine's weight, there was caused too much sudden jerking and jarring of the machine's weight on the elevator, finally resulting in the breaking of the weight-carrying ropes and the up-ending of the machine onto the elevator, causing its collapse and the crashing of both to the basement.

Manifestly, the uneven and irregular way and manner employed in releasing the ropes, to lower the machine, furnishes some substantial evidence of defendant's negligence in the execution of its plan to so manipulate and handle the supporting ropes as to lower the machine in such unison with the slowly lowering elevator, as to impose and divide the burden of its ponderous weight between them.

Defendant's contention is that the alleged conflicting evidence of Sauer and Sandefur tended to show two causes for the falling of the machine and elevator and that, as the defendant was only responsible for one of them, therefore the same was only speculative and constituted no proof which could be submitted to the jury upon the question of its liability for the damage.

However, we do not agree with this contention for the reason that here it was proper to give the jury the right to determine from all the evidence what was the cause of the accident and which of the two witnesses' versions of it they would believe, if conflicting.

The well-settled and long-established rule in this state is that "where there is any evidence to sustain an issue the question is for the jury," and that "it is the province of the jury to weigh the evidence, including inferences from all proven circumstances" and "the weight to be given to the testimony of witnesses, as well as their credibility, are questions which should be submitted to the jury." "The rule in this state is that if the plaintiff makes out his case, however much the evidence for the defendant may overbalance that introduced by the plaintiff, he is entitled to have the jury pass upon the issue; and that the court can not in

such case give a peremptory instruction, although he may be of opinion, that, if the jury should find a verdict for the plaintiff, it should be set aside, and a new trial granted.'' Hobson's Instructions in Juries, sec. 54, pp. 31 and 32.

This rule thus announced has been uniformly, in the repeated decisions of this court, adopted and applied.

Therefore, being of the opinion that ample evidence was introduced by the appellant, tending to show the defendant guilty of negligence in the performance of his contract, which may have caused the destruction of its ''sander'' machine and damage to its elevator, we conclude that the lower court erred in its ruling complained of, in giving the peremptory instruction for the defendant, for which reason the judgment of the trial court should be and is reversed, and cause remanded for further proceedings consistent with this opinion.